UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| STACEY RYAN, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 1:16-cv-00039-SLC |
| GOLDSHIELD FIBERGLASS, INC., | ) ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Before the Court is a motion to dismiss and supporting memorandum filed by Defendant Goldshield Fiberglass, Inc. ("Goldshield"). (DE 6; DE 7). Plaintiff Stacey Ryan ("Ryan"), has filed a response in opposition (DE 11), and Goldshield has filed a reply brief (DE 12). The parties thereafter filed a joint stipulation to dismiss certain claims. (DE 20). This motion is now ripe for adjudication.[1] Goldshield's motion will be GRANTED IN PART and DENIED IN PART for the reasons set forth below.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted); *see also Ray v. City of Chi.*, 629 F.3d 660, 662-63 (7th Cir. 2011) (citation omitted) ("While the federal pleading standard is quite forgiving . . . the complaint must

---

[1] Federal question jurisdiction exists under 28 U.S.C. § 1331. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (DE 15).

contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads [himself] out of court." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007)). Thus, a "plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened to [him] that might be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010).

## II. FACTUAL AND PROCEDURAL BACKGROUND

This employment discrimination action arises out of an employment relationship between Ryan and Goldshield, which ended when Ryan was terminated. Ryan pleads the following facts in her complaint:

Ryan began her employment with Goldshield on March 17, 2014, through a temporary agency, Manpower. (DE 4 ¶ 7(a)). Ryan later became a permanent employee at Goldshield as a sander. (DE 4 ¶ 7(a)). Ryan was supervised by Josh Hollander, who was a group leader. (DE 4 ¶ 7(b)). There were 20 employees in the group, with four employees working as sanders. (DE 4 ¶ 7(b)). Ryan was the only female sander. (DE 4 ¶ 7(b)). There were also two female employees working as patch painters. (DE 4 ¶ 7(b)).

In late March 2014, another employee, whose name was Juan, blew an air hose on Ryan's leg and said to her that "It's your job description to blow me twice a week." (DE 4 ¶ 7(c)). Ryan reported the incident to Manpower, the temporary agency, at the end of her shift, and a written report was sent to Goldshield. (DE 4 ¶ 7(c)). Goldshield's Human Resources employee, Brian

2

Ruble, criticized Ryan for going to Manpower rather than coming to him to solve the problem. (DE 4 ¶ 7(c)). Ruble investigated the incident; he talked to both Juan and Ryan; he then informed Ryan that Juan's position was that she had been the aggressor by blowing "an air hose at Juan's crotch." (DE 4 ¶ 7(c)). Ryan does not have an air hose to use for her job, so she contends that Juan's position is not credible. (DE 4 ¶ 7(c)). Ryan was not provided with any report about the incident, despite asking for a report twice from Human Resources. (DE 4 ¶ 7(c)). Juan was not disciplined for the incident. (DE 4 ¶ 7(c)).

At some point after June 16, 2014, Ryan needed a clamp to hold a production piece in place in order to do her job. (DE 4 ¶ 7(c)). There were no clamps in the tool cart, so Ryan asked a co-employee for a clamp, who threw a clamp at her. (DE 4 ¶ 7(c)). Ryan heard the clamp bouncing toward her. (DE 4 ¶ 7(c)). When Ryan reported this to her supervisor, Hollander, he stated that the clamp had fallen off the cart. (DE 4 ¶ 7(c)). Ryan then notified Jeff Newpart of Human Resources, who is Ruble's supervisor. (DE 4 ¶ 7(c)). Ryan informed Newpart that the clamp had been thrown at her, and his response was that "We already heard this. I already talked to the guy." (DE 4 ¶ 7(c)).

Ryan received a write-up on July 8, 2014, which she characterizes as being "through no fault of her own." (DE 4 ¶ 7(c)). Ryan's boyfriend, who was a co-employee at Goldshield, was also being written up for various incidents. (DE 4 ¶ 7(c)). Ryan complained to Human Resources at the end of her shift on July 29, 2014. (DE 4 ¶ 7(c)). Ruble and Jeff McCleary of Human Resources informed Ryan that she "still ha[s] a 60-day probationary period as a permanent employee," and then told her that "We have to let you go. We don't have time to deal with this." (DE 4 ¶ 7(c)). Ryan responded, "So it's okay to be sexually harassed and [have] a

3

tool thrown at you?" (DE 4 ¶ 7(c)). Human Resources replied, "Absolutely not." (DE 4 ¶ 7(c)). When Ryan responded "That's what happened to me," Human Resources replied, "I don't know what to tell you. You're fired." (DE 4 ¶ 7(c)). Ryan was terminated on July 27, 2014.[2] (DE 4 ¶ 7(d)).

Ryan thereafter filed a complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 22, 2014. (DE 4 at 6-7). In her EEOC complaint, Ryan checked boxes stating that she believed she had been discriminated against in her employment on the basis of her age, sex, retaliation, and national origin. (DE 4 at 6). In the narrative portion of her EEOC complaint, Ryan stated that she was terminated on July 27, 2014; that she believed she had been discriminated against based on her sex because she had been terminated for unknown reasons; because she had never been issued disciplinary action; because male employees who had violated policies had retained their employment; and because she believed Goldshield would have treated its male employees more favorably. (DE 4 at 7).

### III. ANALYSIS

Ryan, in her complaint, pleaded claims for (1) discrimination on the basis of her age under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621; (2) discrimination and retaliation on the basis of her gender under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) ("Title VII"); (3) discrimination and retaliation on the basis of her gender under the Civil Rights Act of 1966, 42 U.S.C. § 1983 ("§ 1983"); (4) discrimination and retaliation on the basis of her national origin under Title VII; and (5) discrimination and

---

[2] This date appears to conflict with Ryan's statement that she complained at the end of her shift on July 29 (DE 4 ¶ 7(c)), given that she would not be working on July 29 if she was terminated on the date she states in her complaint, July 27, 2014 (DE 4 ¶ 7(d)).

4

retaliation on the basis of her national origin under § 1983. (DE 4 ¶¶ 3, 8). Ryan and Goldshield are in agreement that Ryan's age discrimination claim and discrimination and retaliation claims on the basis of her gender and national origin under § 1983 should be dismissed with prejudice. (DE 11 at 1, 3; DE 12 at 1, 5; DE 20). Accordingly, Goldshield's motion to dismiss will be GRANTED as to Ryan's claims under the ADEA and § 1983.

Goldshield, in its motion, supporting memorandum, and reply brief, contends that Ryan's complaint fails to state a claim with regard to her remaining claims under Title VII for discrimination and retaliation on the basis of her gender and national origin. Goldshield therefore argues that Ryan's Title VII claims against it should be dismissed pursuant to Rule 12(b)(6). The Court will first address Ryan's discrimination claims before turning to her retaliation claims against Goldshield.

### A. Title VII Discrimination Claims

With regard to Ryan's claims for discrimination under Title VII on the basis of her gender and national origin (DE 4 ¶¶ 3, 8), Goldshield argues that these claims should be dismissed because her complaint does not plead the elements required to establish a prima facie case of discrimination. Under Title VII, it is "an unlawful employment practice for an employer" "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove discrimination under Title VII by either the direct or indirect methods. *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 815 (7th Cir. 2015). "Under the direct method, a plaintiff must show that [her] employer made an adverse employment decision

'on an impermissible discriminatory basis.'" *Id.* (quoting *Andrews v. CBOCS W., Inc.*, 743 F.3d 230, 234 (7th Cir. 2014)). If a plaintiff does not have direct evidence that her employer discriminated against her on the basis of her race, color, religion, sex, or national origin, then the plaintiff must rely on the indirect method of proving discrimination, commonly known as the *McDonnell Douglas* requirements. "To make out a *prima facie* claim [for gender discrimination] under *McDonnell Douglas*, a plaintiff must demonstrate that (1) she is a member of a protected class, (2) she met her employer's legitimate job expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees outside of the protected class received more favorable treatment." *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 477 (7th Cir. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Lucas v. PyraMax Bank, FSB*, 539 F.3d 661, 666 (7th Cir. 2008)).

"The prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). The Supreme Court has made it clear that it "has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Id.*

The parties' briefs focus their arguments on whether Ryan has adequately pleaded the elements of a prima facie case under *McDonnell Douglas*. Goldshield argues that Ryan's Title VII discrimination claims should be dismissed because the complaint fails to allege each element for a prima facie case under *McDonnell Douglas*, and thus Goldshield has inappropriately attempted to apply an evidentiary standard at the motion to dismiss stage rather than a pleading standard. *See Swierkiewicz*, 534 U.S. at 510; *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827

(7th Cir. 2014) (noting that the district court "had applied too demanding a standard" when it utilized an evidentiary standard for a discrimination claim at the pleading stage); *see also*, Jonathan S. Masur & Lisa Larrimore Oullette, *Deference Mistakes*, 82 U. Chi. L. Rev. 643 (Spring 2015). Goldshield's arguments for dismissal regarding the lack of allegations in Ryan's complaint that would establish a prima facie case of discrimination thus are unconvincing. *Carlson*, 758 F.3d at 827 ("The plaintiff is not required to include allegations—such as the existence of a similarly situated comparator—that would establish a prima facie case of discrimination under the 'indirect' method of proof." (citations omitted)).

"[I]n order to prevent dismissal under Rule 12(b)(6), a complaint alleging [] discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her [membership in a protected class]." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008); *see also Carlson*, 758 F.3d at 827. Goldshield does make arguments touching on the plausibility of Ryan's discrimination claims, however.

Regarding Ryan's claim for gender discrimination, Goldshield argues that Ryan's complaint fails to suggest that her "termination was in any way related to her gender." (DE 7 at 4). Ryan's complaint alleged that she was terminated by Goldshield after complaining when a male coworker made an inappropriate sexual comment to her that it was her "job description to blow [him] twice a week." (DE 4 at ¶ 7(c)). When Ryan was told by Human Resources that Goldshield had to let her go, she asked if "it's okay to be sexually harassed and [have] a tool thrown at you?" (DE 4 at ¶ 7(c)). In Ryan's EEOC claim, she stated that she "believe[d] that [she] ha[d] been discriminated against based on [her] sex," that Goldshield's "male employee[s] have been in violation of various policies, yet have retained their employment," and that she

7

believed Goldshield "would have treated its male employees more favorably." (DE 4 at 7). The totality of the facts pleaded by Ryan in her complaint and stated in her EEOC claim, as well as the inferences drawn therefrom, satisfies the standard that she "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex." *Carlson*, 758 F.3d at 827 (quoting *Tamayo*, 526 F.3d at 1084). Thus, Goldshield's motion to dismiss will be DENIED with regard to Ryan's Title VII claim for gender discrimination.

As to Ryan's claim for national origin discrimination, Goldshield contends that Ryan's complaint fails to make any allegation regarding her national origin and fails to even identify what Ryan's national origin is. Indeed, Ryan's complaint does not specify what her national origin is. The factual allegations in Ryan's complaint do not appear to have any relation to her national origin, and the only mention of "national origin" in her complaint is where she lists her legal claims. (DE 4 ¶¶ 3, 8). Ryan's EEOC claim also fails to provide any allegation that she was discriminated against on the basis of her national origin, although it does check the box on the form. (DE 4 at 6-7). Ryan's claim for Title VII discrimination on the basis of her national origin fails to state a plausible claim for relief, as it does not allege that Goldshield took action against her on the basis of her national origin. It therefore fails to meet the pleading standard for a Title VII discrimination claim, *see Carlson*, 758 F.3d at 827; *Tamayo*, 526 F.3d at 1084, and Goldshield's motion to dismiss will accordingly be GRANTED as to Ryan's Title VII claim for national origin discrimination.

### B. Title VII Retaliation Claims

Ryan's complaint also alleges claims for retaliation on the basis of her gender and

national origin under Title VII. (DE 4 ¶¶ 3, 8). Title VII makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment . . . because [she] has opposed any practice made an unlawful employment practice by [Title VII] or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a). An employee can establish a Title VII retaliation claim under either the direct method or the indirect method. *Coleman v. Donahoe*, 667 F.3d 835, 859 (7th Cir. 2012) (citing *Weber v. Univs. Research Ass'n, Inc.*, 621 F.3d 589, 592 (7th Cir. 2010)). Under the direct method, a plaintiff must show: (1) that she engaged in activity protected by Title VII; (2) that she suffered an adverse employment action; and (3) that there is a causal link between the two. *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1106 (7th Cir. 2012) (citing *Coleman*, 667 F.3d at 859). Under the indirect method, a plaintiff must show: (1) that she engaged in activity protected by Title VII; (2) that she met her employer's legitimate expectations; (3) that she suffered an adverse employment action; and (4) that she was treated less favorably than similarly situated employees who did not engage in the statutorily protected activity. *Vaughn v. Vilsack*, 715 F.3d 1001, 1006 (7th Cir. 2013) (citing *Harper v. C.R. England, Inc.*, 687 F.3d 297, 309 (7th Cir. 2012)).

Similar to the discussion above regarding the pleading standard for discrimination claims, the direct and indirect methods of proving retaliation under Title VII are likewise also evidentiary standards, which are appropriately applied at summary judgment or trial; the direct and indirect methods of proving retaliation under Title VII are not pleading standards that are controlling at the motion to dismiss stage of litigation. *See Carlson*, 758 F.3d at 827 (finding that the district court "had applied too demanding a standard" on a motion to dismiss in a Title VII

9

discrimination and retaliation case); *cf.* Masur & Oullette, *Deference Mistakes*, 82 U. Chi. L. Rev. 643 (discussing the importance of applying the appropriate standard for the specific situation of the case). Goldshield's arguments in favor of dismissing Ryan's retaliation claims are based in large part on these evidentiary standards rather than a pleading standard, and thus these arguments are unpersuasive. Goldshield does also offer arguments touching on the plausibility of Ryan's retaliation claims, however.

With regard to Ryan's claim for gender retaliation under Title VII, Goldshield argues that Ryan's complaint does not allege that she engaged in statutorily protected activity. While a plaintiff may establish retaliation under either the direct or indirect methods, each method requires the employee to prove that she engaged in statutorily protected activity. *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 850 (7th Cir. 2008). Statutorily protected activity usually consists of opposing or complaining about an act of the employer that is believed to violate Title VII, and thus when an employee opposes a practice, the employee must show that she reasonably believed in good faith that the practice she opposed violated Title VII. *Tate v. Exec. Mgmt. Servs., Inc.*, 546 F.3d 528, 532 (7th Cir. 2008). Under Seventh Circuit precedent, complaints "alleging illegal retaliation on account of protected conduct must provide some specific description of that conduct beyond the mere fact that it is protected." *Concentra Health Servs., Inc.*, 496 F.3d at 781. To survive a motion to dismiss, the complaint must put the defendant on notice of the plaintiff's allegations by specifying the plaintiff's protected conduct because "an allegation of retaliation for some unspecified act does not narrow the realm of possibility" for the defendant. *Id.* at 782. To constitute protected expression, the plaintiff's original complaint (or report within the company) must indicate that discrimination has "occurred because of sex, race,

10

national origin, or some other protected class." *Kodl v. Bd. of Educ. Sch. Dist. 45, Villa Park*, 490 F.3d 558, 563 (7th Cir. 2007) (quotation marks omitted); *see also Bernier v. Morningstar, Inc.*, 495 F.3d 369, 376 (7th Cir. 2007); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663-64 (7th Cir. 2006).

Here, one of the complaints Ryan made to Goldshield is sufficient to create the inference that the complaint was based upon her sex or was sexual harassment, as Ryan alleges that she complained to Manpower, which sent a report to Goldshield, about a coworker's statement that "It's [Ryan's] job description to blow [him] twice a week" after the coworker blew an air hose on her leg. (DE 4 ¶ 7(c)). This statement creates an inference that Ryan's complaint to the company involved sexual harassment. Ryan's other complaint, regarding the thrown clamp and her coworkers not helping her in her job, appears to be a general complaint of harassment and does not create an inference of sexual harassment; however, Ryan's complaint regarding the air hose incident is sufficiently stated in her complaint to show that she had engaged in statutorily protected activity. Thus, Goldshield's motion to dismiss will be DENIED regarding Ryan's Title VII claim for gender retaliation.

As to Ryan's Title VII claim for retaliation on the basis of her national origin, no such inference can be drawn from the allegations in Ryan's complaint. The "filing [of] an official complaint with an employer may constitute statutorily protected activity under Title VII," but in order to qualify as statutorily protected activity, "the complaint must indicate the discrimination occurred because of sex race, national origin, or some other protected class." *Tomanovich*, 457 F.3d at 663 (citing *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1147 (7th Cir. 1997)). Furthermore, "[m]erely complaining in general terms of discrimination or harassment, without

11

indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." *Id.* (citations omitted). Nothing in Ryan's complaint indicates that she complained to Goldshield or Manpower regarding any discrimination or harassment resulting from her national origin. As noted above in the discussion of Ryan's national origin discrimination claim, Ryan's complaint does not even identify what her national origin is. The allegations pleaded in Ryan's complaint fail to identify specific protected conduct related to her national origin, and thus, Defendant's motion to dismiss will be GRANTED as to Ryan's claim for national origin retaliation under Title VII.

## IV. CONCLUSION

For the foregoing reasons, Goldshield's motion to dismiss (DE 6) is GRANTED IN PART as to Ryan's ADEA claims, § 1983 claims, and Title VII claims for discrimination and retaliation on the basis of her national origin; and DENIED IN PART as to Ryan's Title VII claims for gender discrimination and retaliation.

SO ORDERED.

Entered this 9th day of May 2016.

/s/ Susan Collins
Susan Collins,
United States Magistrate Judge